## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNIVERSITY OF MARYLAND EASTERN SHORE NATIONAL ALUMNI ASSOCIATION, INC., | * |
| | * |
| *Plaintiff*, | * |
| v. | *     Civil Action No. RDB-23-2141 |
| SCHULTE HOSPITALITY GROUP, INC., | * |
| *Defendant*. | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Through its Amended Complaint (ECF No. 7),[1] Plaintiff University of Maryland Eastern Shore National Alumni Association, Inc. ("Plaintiff" or "UMES NAA") asserts four claims against Defendant Schulte Hospitality Group, Inc. ("Defendant" or "Schulte") related to the parties' dealings regarding a room block at one of Defendant's hotels located in Salisbury, Maryland for Plaintiff's membership during the University of Maryland Eastern Shore's ("UMES" or the "University") homecoming in November 2023. Specifically, UMES NAA asserts two federal discrimination claims—a claim for a violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Count I) (*id.* ¶¶ 18–20); and a claim seeking injunctive relief for Schulte's alleged violation of Title II of the Civil Rights Act, 42 U.S.C. §§ 2000a *et seq.* (Count II) (*id.* ¶¶ 21–24)—as well as claims under Maryland law—a claim for breach of contract

---

[1] For clarity, this Memorandum Order cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Order cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

(Count III) (*id.* ¶¶ 25–27); and a claim for promissory estoppel (Count IV) (*id.* ¶¶ 28–30).

Presently pending before this Court is Defendant's Motion to Dismiss the Amended Complaint (ECF No. 8). UMES NAA has responded in opposition (ECF No. 11), and Schulte has replied (ECF No. 12). The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, the Defendant's Motion to Dismiss the Amended Complaint (ECF No. 8) shall be GRANTED. Specifically, Counts I and II of Plaintiff's Amended Complaint (ECF No. 7) are DISMISSED WITHOUT PREJUDICE with leave to amend within 15 days of the date of the issuance of a separate Order (i.e., by July 30, 2024); and Counts III and IV are DISMISSED WITH PREJUDICE.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's Amended Complaint (ECF No. 7), and accepted as true for the purpose of Defendant's Motion to Dismiss (ECF No. 8).

University of Maryland Eastern Shore is an 1890 Land Grant University[2] located in Princess Anne, Maryland whose undergraduate population ranged from 57.5% to 74.2% underrepresented minority students between 2018 to 2022. (ECF No. 7 ¶ 4.) Like other 1890 Land Grant Universities, UMES delivers programs that focus on underserved groups. (*Id.*)

---

[2] 1890 Land Grant Universities are historically Black colleges and universities ("HBCUs") established as a result of the Second Morrill Act of 1890, 7 U.S.C. § 321 *et seq.*

The U.S. Department of Agriculture ("USDA") National Institute of Food and Agriculture ("NIFA") provides funding and support to the 1890 Land Grant Universities relating to institutional capacity building, research, scholarships and more.  (*Id.*)  UMES's website provides that its vision is to "be the preeminent public Historically Black University" and its mission is to serve "first-generation and underserved students."[3]  (*Id.*)

Plaintiff UMES NAA was established formally under state law on June 6, 1963 as "Maryland State College Alumni Association, Inc."[4] to "promote the interests and welfare of the Maryland State College."[5]  (*Id.*¶ 5.)  Section VI.5.3 of UMES NAA's bylaws establish a Homecoming Committee "to plan and execute all homecoming activities."[6]  (*Id.*)  According to Plaintiff's Amended Complaint, UMES NAA "secure[s] rooms and obtain[s] a favorable rate with local hotels during UMES's annual Homecoming events."  (*Id.* ¶ 6.)  UMES NAA emphasizes that this is an "important responsibility," due to the "severely limited number of hotels in the vicinity of the UMES Campus" and, as homecoming is Plaintiff's largest yearly fundraising opportunity, "Plaintiff gives priority access to rooms as a benefit for higher levels of financial support of the Association."  (*Id.*)  Plaintiff represents that it is the UMES NAA's "proud custom to donate thousands of dollars to UMES' scholarship fund" following its fundraising efforts throughout the year and during homecoming.  (*Id.*)

While UMES homecoming was previously held during the month of February, it was

---

[3] *See Vision, Missions and Values*, UNIV. OF MD. E. SHORE, available at https://wwwcp.umes.edu/about/vision-mission-and-values/.

[4] The University's name has changed several times since its founding, with its most recent renaming to UMES occurring in 1970.  *See UMES History*, UNIV. OF MD. E. SHORE, available at https://wwwcp.umes.edu/about/umes-history.

[5] *See History*, UNIV. OF MD. E. SHORE NAT'L ALUMNI ASS'N, available at https://www.umesnaa.org/history.

[6] *See UMES NAA Bylaws*, UNIV. OF MD. E. SHORE NAT'L ALUMNI ASS'N (Jan. 6, 2024), available at https://www.umesnaa.org/_files/ugd/ad34d4_ddf8a1f8add24bdf98b3ba1d7c03d0d1.pdf (PDF).

changed to occur during the month of November in 2021.  (*Id.* ¶ 7.)  Shortly after the 2021 homecoming, Teonna Wallop, a Black woman who is UMES NAA's current president, (*id.* ¶ 6), met with Christian Ledford, who was a property manager for Defendant Schulte, to negotiate terms for reserving a block of rooms at the Courtyard by Marriott located at 128 Troopers Way in Salisbury, Maryland for UMES's November 2022 homecoming.  (*Id.* ¶ 8.) According to Plaintiff, Ledford agreed to a hotel buy-out for the 2022 homecoming, promising to provide a contract to UMES NAA memorializing the agreement.  (*Id.*)  Plaintiff alleges that when Wallop requested the contract "just two months after the meeting," she was advised that Starlet Wheatley had replaced Ledford and another employee, Patricia Shea, who is a general sales manager for Defendant, would take over the room block negotiations.  (*Id.*)  According to Plaintiff, Shea acknowledged the agreements made by Ledford, but informed Wallop that Defendant would provide only 65 rooms at $98.00 per night (plus tax).  (*Id.*)  UMES NAA accepted the offer.  (*Id.*)

During the same conversation, Shea allegedly indicated that the hotel intended to hire security at Plaintiff's expense, referencing incidents in Defendant's lobby during UMES's 2021 homecoming, as well as the need to prevent underage drinking in the lobby and ensure that those entering the hotel were hotel guests.  (*Id.* ¶ 9.)  When Wallop inquired whether security was required for the events of Salisbury University,[7] Shea allegedly stated "no . . . because they know how to come in, go to their rooms, and go to sleep."  (*Id.*)  While security was not ultimately required for the November 2022 homecoming, UMES NAA alleges that nightly

---

[7] Plaintiff's Amended Complaint emphasizes that the undergraduate population of Salisbury University, which is in Salisbury, Maryland, has ranged from 68% to 70% white students between 2018 to 2022.  (ECF No. 7 ¶ 9, n.6.)

rates—which, presumably, were not part of the contracted 65-room block—climbed and that Shea stated "I thought you people were going to have a good weekend" when certain of Plaintiff's Black members expressed concerns about issues they had encountered during check-in.  (*Id.* ¶ 10.)

Sometime after the November 2022 homecoming, Wallop again met with Shea to discuss homecoming 2023, (*id.* ¶ 11), which was scheduled for November 12–19, 2023.  (*Id.* ¶ 7.)  During that meeting, Shea agreed to provide a room block of 65 rooms at a rate of $105.00 per night (plus tax).  (*Id.* ¶ 11.)  However, sometime after this meeting, Plaintiff's members complained in writing to Defendant's management about Shea's "you people" comment during the November 2022 homecoming weekend.  (*Id.* ¶ 12.)  According to Plaintiff, this resulted in Shea "unexpectedly request[ing] a meeting" in December 2022, and Shea advising Wallop that the room block would be limited to 20 rooms and more than double the previously quoted rate.  (*Id.* ¶ 13.)  Plaintiff complains that the new rate was higher than both the rates offered for Salisbury University's homecoming in October 2023 and the rates offered for the entire month of November 2023.  (*Id.*)  According to Plaintiff, Defendant organized its website such that only members of Marriott's reward program can book rooms at the Courtyard by Marriott in Salisbury, Maryland for the November 2023 homecoming dates.  (*Id.* ¶ 16.)  After Plaintiff complained to Defendant's franchisor, Marriott International, who referred the complaint to Defendant Schulte, (*id.* ¶ 14), Defendant refused to send a written contract for signature by one of Plaintiff's representatives, preventing UMES NAA from securing the small block of rooms that Defendant was offering.  (*Id.* ¶ 15.)

This resulted in the Plaintiff UMES NAA filing on January 9, 2023 a complaint with

the Maryland Commission on Civil Rights.  (*Id.* ¶ 17.)  On or about February 23, 2023, Plaintiff filed a complaint with Maryland's Attorney General Consumer Protection Division.  (*Id.*)  On August 8, 2023, Plaintiff commenced the instant litigation, filing a two-count Complaint in this Court asserting federal discrimination claims against Defendant.  (ECF No. 1.)  On September 15, 2023, Plaintiff filed an Amended Complaint (ECF No. 7), reasserting the two federal discrimination claims—a claim for a violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Count I) (*id.* ¶¶ 18–20); and a claim for a violation of Title II of the Civil Rights Act, 42 U.S.C. §§ 2000a *et seq.* (Count II) (*id.* ¶¶ 21–24)—and adding two state law claims—a claim for breach of contract (Count III) (*id.* ¶¶ 25–27); and a claim for promissory estoppel (Count IV) (*id.* ¶¶ 28–30).  Defendant Schulte, as the operator of the Courtyard by Marriott in Salisbury, Maryland, has filed the subject Motion to Dismiss the Amended Complaint (ECF No. 8).  Schulte challenges the jurisdiction of this Court as well as contends that the Amended Complaint fails to state a claim for relief.  Plaintiff responded (ECF No. 11), and Defendant replied (ECF No. 12).  This matter is ripe for review.

## STANDARD OF REVIEW

### I.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true."  *Kerns*

*v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  In determining whether jurisdiction exists, the district court "is to regard the pleading' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991).  The plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. *Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

## II.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P 8(a)(2).  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must, however, set

forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

Through its Amended Complaint (ECF No. 7), Plaintiff UMES NAA asserts two federal discrimination claims—specifically, a claim for a violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Count I) (*id.* ¶¶ 18–20); and a claim for a violation of Title II of the Civil Rights Act, 42 U.S.C. §§ 2000a *et seq.* (Count II) (*id.* ¶¶ 21–24)—as well as state law claims—specifically, a claim for breach of contract (Count III) (*id.* ¶¶ 25–27); and a claim for promissory estoppel (Count IV) (*id.* ¶¶ 28–30).[8] Through its Motion to Dismiss, Defendant Schulte seeks dismissal of all four counts. (ECF No. 8.) Schulte challenges the jurisdiction of this Court with respect to Counts I and II, and further contends that the Amended Complaint fails to state a claim for relief.

## I.    Plaintiff's Section 1981 Discrimination Claim (Count I)

## A.  Corporate Statutory Standing to Advance a § 1981 Discrimination Claim

Initially, this Court addresses whether UMES NAA—a corporate entity—has standing to assert a discrimination claim pursuant to 42 U.S.C. § 1981. Challenges to standing may be

---

[8] Jurisdiction of this Court is predicated on federal question jurisdiction, 28 U.S.C. § 1331, in light of Counts I and II. (ECF No. 7 ¶ 3.) In addition, Plaintiff invokes this Court's diversity jurisdiction, 28 U.S.C. § 1332, and supplemental jurisdiction, 28 U.S.C. § 1367. (*Id.*)

challenged on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) because it challenges a court's authority to hear the matter. *Demetres v. East West Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). When a defendant challenges subject matter jurisdiction facially, as here, the plaintiff "is afforded the same procedural protection" as under Rule 12(b)(6). *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quotation omitted). "[T]he motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).

Section 1981 protects against purposeful race-based discrimination with respect to the formation, execution, and termination of contracts. In its current form, § 1981 provides:

> (a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

> (c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

As was observed by the district court in *Strata Solar, LLC v. Fall Line Construction, LLC*,

683 F. Supp. 3d 503 (E.D. Va. 2023), "[while] the phrasing of subsection (a) of the statute arguably suggests that relief under § 1981 is only available to non-white persons, it is now well-established that § 1981 relief is available to *all* natural persons regardless of their race." *Id.* at 511 (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295–96 (1976); *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 387, 391 (1982)).  In addition to the fact that all natural persons, regardless of race, have statutory standing to sue under § 1981, corporate entities have been found to have imputed racial identities, as was recognized by the Fourth Circuit in *Carnell Construction Corp. v. Danville Redevelopment & Housing Authority*, 745 F.3d 703, 714–15 (4th Cir. 2014), and *Woods v. City of Greensboro*, 855 F.3d 639, 646 (4th Cir. 2017).  In addition to the Fourth Circuit's express recognition that a corporation can have an imputed racial identity such that it can demonstrate "statutory standing" to bring a § 1981 claim, "[s]everal published circuit court case favorably cited by the Fourth Circuit in *Carnell* and *Woods* have long-recognized" that a corporation may "demonstrate that it suffered corporate harm with respect to a contract to which the corporation was a party or potential party as a result of animus toward the race of a corporate representative or employee."  *Strata Solar*, 683 F. Supp. 3d at 512 (citing *Gersman v. Group Health Ass'n*, 931 F.2d 1565, 1568 (D.C. Cir. 1991), *vacated on other grounds*, 502 U.S. 1068 (1992); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004); *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1072 (10th Cir. 2002)).

While the Fourth Circuit has neither expressly embraced nor expressly rejected the latter basis for corporate standing, this Court need not further address the issue, as Plaintiff does not allege that the Wallop's race was a "but for" cause of the contractual harm suffered

by UMES NAA.  Rather, Plaintiff insists that "the Amended Complaint plausibly alleges that UMES NAA is the type of minority-owned corporation that the . . . Fourth Circuit[] ha[s] found to possess a racial identity."  (ECF No. 11-1 at 2–3.)

In *Carnell Construction*, the Fourth Circuit concluded that a Virginia-based corporation had standing to assert discrimination claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.*, and 42 U.S.C. § 1981, imputing the racial identity of the corporate owner to the corporate entity itself.  745 F.3d at 715–16.  Looking to the Ninth Circuit's decision in *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004), the Fourth Circuit explained that "a corporation that is minority-owned and has been properly certified as such under applicable law can be the direct object of discriminatory action and establish standing to bring an action based on such discrimination."  745 F.3d at 715.  In *Woods*, the Fourth Circuit found that a corporation "owned and led by a protected minority group" had an "imputed racial identity" that satisfied the § 1981 standing requirements even though it was not "certified" under state law as a minority-owned company.  855 F.3d at 646. In sum, the Fourth Circuit has allowed corporate entities to bring suit under § 1981 where a corporation has acquired a protected identity pursuant to a government designation—such as in *Carnell Consrtuction*—and where a corporation is owned entirely by shareholders of a single race—such as in *Woods*.[9]

General factual allegations may suffice at the pleading stage.  *Lujan v. Nat'l Wildlife Fed.*,

---

[9]  In addition to the two circumstances explicitly endorsed by the Fourth Circuit, the Second Circuit has found that a corporation had an imputed racial identity in the context of asserting a claim under Title IV where a corporation is "established for the very purpose of advancing minority interests."  *Hudson Valley Freedom Theater v. Heimbach*, 671 F.2d 702, 706 (2d Cir. 1982).  The Fourth Circuit cited favorably to *Hudson Valley* in *Carnell Construction*.  745 F.3d at 714.

504 U.S. 555, 561 (1992). Here, the Plaintiff's Amended Complaint provides that UMES—not UMES NAA, but the institution with which it is affiliated—is a historically Black 1890 Land Grant University, and over the past five years, a majority of UMES's undergraduate population have identified as underrepresented minority students. (ECF No. 7 ¶ 4.) The Amended Complaint provides that UMES NAA "was founded . . . with the purpose to 'promote the interest and welfare of [UMES], its alumni, and the college.'" (*Id.* ¶ 5.) It further provides that UMES NAA's current president is a Black woman and describes the events as occurring to its Black members. (*Id.* ¶¶ 6, 9–10.) The operative Complaint does not allege—beyond its mention of Wallop's race—that UMES NAA is "owned and led by a protected minority group," *Woods*, 855 F.3d at 646, nor does UMES NAA allege that it is "certified" under state law as a minority-owned company, *Carnell Construction*, 745 F.3d at 715–16. Nevertheless, an alumni association affiliated with an 1890 Land Grant University—an HBCU—can have an imputed racial identity. Overall, with all inferences in Plaintiff's favor at this stage, the Court finds that UMES NAA has set forth sufficient factual allegations to establish that it has an imputed racial identity under the Fourth Circuit's precedent. As such, the Court finds that UMES NAA—a corporate entity—has standing to assert a discrimination claim pursuant to 42 U.S.C. § 1981.

**B. The Sufficiency of UMES NAA's Allegations Supporting its Non-Employment Discrimination Claim Under Section 1981**

In Count I of Plaintiff's Amended Complaint, UMES NAA alleges that Defendant violated 42 U.S.C. § 1981 by interfering with the alumni association's right to contract because of the Plaintiff's imputed racial identity. "Section 1981 establishes that '[a]ll persons . . . have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Denny*

*v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006) (quoting 42 U.S.C. § 1981(a)).

"It defines 'make and enforce contracts' to include 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Id.* (quoting 42 U.S.C. § 1981(b)). "To state a cause of action in a § 1981 action" not involving employment, "a plaintiff must show: (1) he . . . is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute." *Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 734 (D. Md. 2001). "To prove a § 1981 claim, therefore, a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny*, 456 F.3d at 434. "A plaintiff must also show that the interference with a contractual interest would not have happened but for the plaintiff's race." *Nanendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (citing *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009 (2020)).

In this case, Plaintiff does not allege facts that, if proven, would establish direct evidence of discrimination. However, a plaintiff alleging race discrimination under § 1981 may prove his claim through indirect evidence under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001) (applying the burden-shifting framework to a non-employment § 1981 claim). Under that framework:

> To establish a prima facie case of discrimination in a § 1981 cause of action relating to the purchase of goods or services, [a plaintiff] must establish that: (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the

> opportunity to contract for goods or services [under circumstances giving rise
> to an inference of unlawful discrimination].

*Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). At the pleading stage in a discrimination lawsuit, a plaintiff is not required "to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss." *McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin.*, 780 F.3d 582, 585 (4th Cir. 2015); *Swierkiewicz v. Sorema*, 534 U.S. 506, 510–11 (2002). Still, the Court must consider the elements of a discrimination claim to discern whether the plaintiff has stated a facially plausible claim. *Iqbal*, 556 U.S. at 678; *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010). "[T]o survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to [the elements]." *Nanendla*, 24 F.4th at 305.

Schulte argues that the UMES NAA has failed to state any fact inferring an intent to racially discriminate. (ECF No. 8-1 at 5–6.) To state a § 1981 race-discrimination claim, a plaintiff must allege facts making it plausible that, but for race, she would not have suffered the loss of a legal protected right under the statute. *Comcast Corp.*, 140 S. Ct. at 1019. UMES NAA has not alleged sufficient facts from which the Court could reasonably infer causation— that Defendant's interference with the alumni association's right to contract would not have happened *but for* race. Even when read in the context of the parties' dealings over the course of what appears to be at least a year, if not several years, Plaintiff's allegations that Defendant's employee (1) offered unfavorable rates and terms to Plaintiff, (2) suggested security would be required for Plaintiff's November 2022 homecoming event but not for another nearby university's homecoming, and (3) used the term "you people" towards certain of Plaintiff's Black members during the November 2022 homecoming do little more than cite to

mistreatment and ask the Court to conclude that it must have been related to race.

With respect to UMES NAA's proffered comparator evidence, "[r]acial animosity can be shown by . . . differential treatment of similarly situated non-minority [entity]." *Asi v. Info. Mgmt. Grp., Inc.*, No. GLR-18-3161, 2019 U.S. Dist. LEXIS 156486, 2019 WL 4392537, at *6 (D. Md. Sept. 13, 2019). Here, Plaintiff alleges[10] that Shea allegedly indicated that the hotel intended to hire security at Plaintiff's expense, referencing incidents in Defendant's lobby during UMES's 2021 homecoming, as well as the need to prevent underage drinking in the lobby and ensure that those entering the hotel were hotel guests. (ECF No. 7 ¶ 9.) The operative Complaint further provides that when Wallop inquired whether security was also required for the events of Salisbury University, "a similarly situated group that is not comprised principally of Black alumni," Shea stated that no security was required for them because "they know how to come in, go to their rooms, and go to sleep." (*Id.*)

In brief, the operative Complaint alleges that Defendant proposed—but did not ultimately require—security for Plaintiff's event in November 2022, and did not propose security for Salisbury University's event. However, the operative Complaint does not sufficiently allege that Salisbury University was "similarly situated"—i.e., whether the Plaintiff and the referenced comparator were similarly situated in all material respects. *Coleman*, 626 F.3d at 191. Most obviously, the Operative Complaint does not allege that Salisbury University had a room block at Defendant's hotel, nor does Plaintiff allege any detail that would permit

---

[10] Plaintiff further alleges that during the meeting between Wallop and Defendant's employees in December 2022, Shea advised that the non-room block rates offered by Defendant for the 2023 homecoming event would be $425 per night (plus tax), emphasizing that these rates were higher than the rates offered during Salisbury University's homecoming in October 2023. (ECF No. 7 ¶ 13.) Importantly, Plaintiff complains of the non-room block rate, not the room block rate of $229 per night (plus tax) for 20 rooms that was offered to Plaintiff.

the Court to infer that the events were similar scale.  In the absence of plausible allegations that Salisbury University was similarly situated, such an allegation indicates only that Plaintiff was treated differently, not that UMES NAA was treated differently *because of* race.  *See, e.g., Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 400 (4th Cir. 2021).  Thus, these allegations do not give rise to a reasonable inference that Defendant's interference with the alumni association's right to contract would not have happened but for Plaintiff's race.

With respect to UMES NAA's attempt to rely on Shea's "you people" comment, mere use of the phrase "you people" is insufficient to demonstrate discrimination.  *King v. E. Shore Water, LLC*, No. SKG-11-1482, 2012 U.S. Dist. LEXIS 107300, 2012 WL 3155647, at *13 (D. Md. July 31, 2012).  Here, Plaintiff alleges that Shea stated "I thought you people were going to have a good weekend" when certain of Plaintiff's Black members expressed concerns about issues they had encountered during check-in.  (ECF No. 7 ¶ 10.)  To assume that Shea meant to refer to Plaintiff's members' race when she made the "you people" statements constitutes mere speculation, even when considered in the context of the parties' dealings over a considerable period of time.  This is insufficient to show racial discrimination.  At bottom, because the allegations in the Amended Complaint do not give rise to an inference that the Defendant's interference with their right to contract would not have happened but for race, UMES NAA has failed to allege a claim under § 1981.  Accordingly, Count I is DISMISSED WITHOUT PREJUDICE.[11]

---

[11]  As further detailed *infra* and in the separate Order, Count I of Plaintiff's Amended Complaint (ECF No. 7) is DISMISSED WITHOUT PREJUDICE with leave to Plaintiff UMES NAA to file a Second Amended Complaint within fifteen days of this Order, i.e., by July 30, 2024.

II.    **UMES NAA's Request for Relief Under Title II of the Civil Rights Act of 1964 (Count II)**

A. **Standing**

In Count II, Plaintiff alleges that Defendant violated Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a *et seq.*, which prohibits discrimination in places of public accommodation on the basis of race, color, religion, or national origin.  Similar to its challenge to standing on Count I, Defendant challenges Plaintiff's standing to advance a race-based discrimination claim under Title II of the Civil Rights Act of 1964.  As noted *supra*, this Court finds that UMES NAA has set forth sufficient factual allegations to establish an imputed racial identity.

In addition to challenging Plaintiff's standing for lack of an imputed racial identity, Defendant further asserts that Plaintiff has failed to demonstrate a real or immediate threat of future harm.  Only injunctive relief is available under Title II of the Civil Rights Act of 1964. *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1986) (per curiam).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).  Standing to seek injunctive relief does not exist absent a "showing of any real or immediate threat that the plaintiff will be wronged again," or, in other words, "a likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  A "speculative . . . claim of future injury" does not establish standing to seek equitable relief. *Id.*

In determining whether Plaintiff has alleged an imminent or actual threat of future harm, the Court will consider whether Plaintiff has alleged facts to show: (1) an intent to return

to the hotel, and (2) a sufficient likelihood of facing a similar harm again upon return.  At the pleading stage, a plaintiff must only allege a plausible plan to return to the establishment. *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 455 (4th Cir. 2017).  In considering a plaintiff's alleged intent to return, courts often consider several guiding factors including (1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant.  *Daniels v. Arcade, L.P.*, 477 F. App'x 125 (4th Cir. 2012) (noting district court's application of those four factors but declining to adopt them).

With respect to the first factor, Plaintiff's Amended Complaint provides that there are a "severely limited number of hotels in the vicinity of the UMES Campus."  (ECF No. 7 ¶ 6.) With respect to the second factor, the operative Complaint provides that Plaintiff obtained a room block with Defendant previously for homecoming in 2021 and 2022, and attempted to obtain a room block with Defendant for Homecoming 2023.  (*Id.* ¶¶ 6–16.)  With respect to the third and fourth factors, it is clear that Plaintiff will need to obtain a room block for future homecoming events.  (*Id.* ¶ 6.).  Overall, with all inferences in Plaintiff's favor at this stage, the Court finds that UMES NAA has alleged a plausible intent to return the Defendant's hotel.

In addition, Defendant argues that Count II must be dismissed because UMES NAA failed to allege that it has met the procedural prerequisites of § 2000a.  A plaintiff bringing an action under Title II is not required to exhaust administrative remedies, *see* 42 U.S.C. § 2000a-6(a), but, in a state that has both laws prohibiting the alleged discriminatory conduct and state authorities that can provide relief from such conduct, "no civil action may be brought under [Title II] before the expiration of thirty days after written notice of such alleged act or

practice has been given to the appropriate State or local authority," *id.* § 2000a-3(c).  Maryland law prohibits discrimination on the basis of race in public accommodations; therefore, Plaintiff was required to provide notice to the state authority, the Maryland Commission on Civil Rights ("MCCR").  *See* Md. Code, State Gov't § 20-304.

Plaintiff's Amended Complaint provides that: "On or about January 9, 2023, Plaintiff filed a complaint with [the] Maryland Commission on Civil Rights.  On or about February 23, 2023, Plaintiff filed a complaint with Maryland's Attorney General Consumer Protection Division regarding Defendant's discriminatory behavior."  (ECF No. 7 ¶ 17.) While Defendant complains that "Plaintiff does not . . . allege that either of those complaints . . . asserted a violation of Section 20-304," (ECF No. 8-1 at 8), this Court, taking all inferences in Plaintiff's favor at this stage, finds Plaintiff's operative Complaint sets forth sufficient factual allegations to find that it is plausible that Plaintiff complied with these requirements.  As such, the Court proceeds to address the sufficiency of the allegations supporting Count II.

## B. The Sufficiency of UMES NAA's Allegations Supporting its Claim for Relief Under Title II of the Civil Rights Act of 1964

42 U.S.C. § 2000a states in relevant part:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

Plaintiff must demonstrate that (1) the Defendant affects public commerce; (2) the Defendant is a public accommodation; and (3) the Defendant denied Plaintiff full and equal enjoyment of the hotel based on their race.  *See Callwood c. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 694

(D. Md. 2000).

This Court has applied the same framework for analyzing discrimination claims under both Title II and Section 1981, thus typically dismissing the Title II claim if the Section 1981 claim has already been dismissed.  *See, e.g., Sherman v. Marriott Hotel Servs., Inc.*, 317 F. Supp. 2d 609, 616 (D. Md. 2004); *Callwood*, 98 F. Supp. 2d at 721.  As discussed *supra*, the allegations in the Amended Complaint do not give rise to an inference that the Defendant's denial of Plaintiff's full and equal enjoyment of the hotel would not have happened *but for* any imputed racial identity that Plaintiff may or may not be able to establish.  As such, Count II is also DISMISSED WITHOUT PREJUDICE.[12]

## III.    Plaintiff's State Law Claims (Counts III and IV)

As the basis of this Court's jurisdiction over Plaintiff's state law claims advanced in Counts III and IV is diversity of citizenship under 28 U.S.C. § 1332(a), (ECF No. 7 ¶ 3), Maryland law applies.  *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Gasperini v. Ctr. For Humanties, Inc.*, 518 U.S. 415, 427 (1996)).  Each of Plaintiff's state law claims are discussed below in turn.

### A.  Plaintiff's Claim for Breach of Contract (Count III)

In Count III, Plaintiff advances a claim for breach of contract against Defendant, pointing to the parties' oral agreement that Schulte would offer UMES NAA 65 rooms at $105 a night for homecoming 2023 and the parties' oral agreement that Defendant would send Plaintiff a written contract reflecting such agreement.  (ECF No. 7 ¶ 26.)  Defendant argues

---

[12]  As further detailed *infra* and in the separate Order, Count II of Plaintiff's Amended Complaint (ECF No. 7) is DISMISSED WITHOUT PREJUDICE with leave to Plaintiff UMES NAA to file a Second Amended Complaint within fifteen days of this Order, i.e., by July 30, 2024.

that a contract never existed between the parties with respect to homecoming 2023.  (ECF No. 8-1 at 11–13.)

The elements of a breach of contract claim in Maryland are: (1) the existence of a contractual obligation, (2) the breach of a stated obligation, and (3) damages resulting from the breach.  *See Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015).  Under Maryland law, "[t]he formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration."  *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004) (citing *Peer v. First Fed. Sav. and Loan Ass'n of Cumberland*, 331 A.2d 299, 301 (Md. 1975)).  For sufficient consideration, there must be a "benefit to the promisor or a detriment to the promisee."  *Mould v. NJG Food Serv.*, 986 F. Supp. 2d 675, 678 (D. Md. 2013) (citing *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 661 (Md. 2003)).

To count as consideration, a promise must "constitute a binding obligation."  *Cheek*, 835 A.2d at 661.  "Without a binding obligation, sufficient consideration does not exist to support a legally enforceable agreement."  *Id.* (citing *Tyler v. Capitol Indem. Ins. Co.*, 110 A.2d 528, 530 (Md. 1955))  "Unlike a binding obligation, an 'illusory promise' appears to be a promise, but it does not actually bind or obligate the promisor to anything.  Because an illusory promise is not binding on the promisor, an illusory promise cannot constitute consideration.  *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (citing *Cheek*, 835 A.2d at 662).

Here, the Plaintiff describes conversations between UMES NAA's president Wallop and Defendant's employees wherein Shea allegedly "agreed to rent up to 65 rooms at $105 a night to Plaintiff's members during UMES'[s] 2023 Homecoming," and "also agreed to

provide Plaintiff with a written contract to memorialize this agreement." (ECF No. 7 ¶ 26.) Plaintiff characterizes both oral agreements as separate, legally enforceable contracts.

With respect to Plaintiff's position that the Defendant's oral agreement to provide Plaintiff with 65 rooms at $105 a night constitutes a legally enforceable contract, Plaintiff insists that it accepted Defendant's offer and that there was sufficient consideration, pointing to "Plaintiff's efforts to connect its members with the Defendant's hotel and . . . the nightly hotel fee that Plaintiff's members would pay." Even if it is assumed, *arguendo*, that Plaintiff accepted Defendant's offer,[13] as the operative Complaint describes it, Defendant did not promise to provide Plaintiff with a room block in exchange for Plaintiff's efforts to connect its members with the Defendant. Rather, Defendant merely promised to provide a room block upon finalization of a "written contract." (ECF No. 7 ¶¶ 11–15.) As such, the Defendant's promise to provide the room block was illusory, as it did not actually bind or obligate the Defendant as the promisor to anything. *Hill*, 412 F.3d at 543.

Plaintiff's position that the Defendant's oral agreement to provide Plaintiff with a written contract constitutes an additional, legally enforceable contract is even more tenuous. The operative Complaint is devoid of allegations that Plaintiff, UMES NAA, promised anything in exchange for Defendant's provision of a written contract. Put succinctly, there was no bargained-for exchange between the parties, thus Plaintiff has failed to demonstrate sufficient consideration. *Chernick v. Chernick*, 610 A.2d 770, 774 (Md. 1992) ("Consideration

---

[13] While Plaintiff's Amended Complaint does not explicitly allege that UMES NAA accepted this offer, (ECF No. 7 ¶ 11), Plaintiff claims "[a]cceptance can be easily inferred as [the operative] Complaint alleges that when Defendant refused to honor this agreement, Plaintiff took it as a denial of Plaintiff's 'right to equal enjoyment of [Defendant's] facilities.'" (ECF No. 11-1 at 12.) Because the Court finds Plaintiff's allegation that this oral agreement to provide a room block constituted a legally enforceable contract deficient for other reasons, the Court need not address this point further.

necessitates that 'a performance or a return promise must be bargained for.'  A performance is bargained for if 'it is sought by the promisor in exchange for his promise and is given by the promise in exchange for that promise.'" (quoting RESTATEMENT (SECOND) OF CONTRACTS § 71 (1981))).  As such, Count III of Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

### B. Plaintiff's Claim for Promissory Estoppel (Count IV)

In Count IV, Plaintiff advances a claim for promissory estoppel against Defendant, again pointing to Defendant's promise to offer Plaintiff 65 rooms at $105 a night for homecoming 2023 and the Defendant's promise to send Plaintiff a written contract reflecting such agreement.  (ECF No. 7 ¶ 29.)  Defendant argues that Plaintiff fails to plead the requisite clear or definite promise or detrimental reliance.  (ECF No. 8-1 at 13–14.)

Maryland courts apply the formulation of promissory estoppel set forth in the RESTATEMENT (SECOND) OF CONTRACTS § 90(1) (1981), which considers four elements: (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise.  *Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996).  Further, promissory estoppel is a quasi-contractual claim, meaning "it is an equitable remedy that permits recovery 'where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise.'" *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 626 (D. Md. 2003) (emphasis

added) (quoting *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) (internal quotations and citations omitted)).

Plaintiff's equitable claim based on promissory estoppel fails.  Despite Plaintiff's claims to the contrary in their opposition memoranda, (ECF No. 11-1 at 16–17), it is plainly clear from the allegations in the operative Complaint that Plaintiff appreciated that there was no deal.  (ECF No. 7 ¶¶ 11–15.)  Under the allegations pled, Plaintiff could not have reasonably relied upon any promise made by Defendant.  As such, Count IV of Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated above, Defendant Schulte Hospitality Group, Inc.'s Motion to Dismiss the Amended Complaint (ECF No. 8) shall be GRANTED.  Plaintiff University of Maryland Eastern Shore National Alumni Association, Inc.'s Amended Complaint (ECF No. 7) is DISMISSED pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  As a general rule, leave to amend a complaint to address deficiencies in an original complaint is freely given pursuant to Rule 15(a).  Indeed, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before a dismissal of a case with prejudice.  *See Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 725 (D. Md. 2021) (citing *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003)).  However, there is authority that leave to amend does not need to be granted unless requested by the plaintiff.  *Id.* (citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555–56 (5th Cir. 2007)).  Nevertheless, leave to amend may be denied if such amendment is deemed futile.  *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 624 (4th Cir. 2015).

While Plaintiff's state law claims (Counts III and IV) are DISMISSED WITH PREJUDICE, this Court deems it prudent to afford Plaintiff opportunity to amend its complaint with respect to the federal discrimination claims—a non-employment race discrimination claim under 42 U.S.C. § 1981 (Count I) and a claim seeking injunctive relief for Defendant Schulte's alleged violation of Title II of the Civil Rights Act, 42 U.S.C. §§ 2000a *et seq.* (Count II).   As noted above, UMES NAA has failed to plausibly claim how any mistreatment it endured by Schulte was on account of race (Counts I and II).   Nevertheless, Plaintiff may file an Amended Complaint within fifteen days of this Opinion, i.e., by July 30, 2024.   Such an Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment.   *Harvey*, 520 F. Supp. 3d at 725 (citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008)).   Accordingly, the DISMISSAL of Counts I and II will initially be WITHOUT PREJUICE.   If an Amended Complaint is not filed by July 30, 2024, the Clerk of this Court is instructed to CLOSE this case with DISMISSAL WITH PREJUDICE.

A separate Order follows.


Date: July 15, 2024                                                     /s/
                                                                  Richard D. Bennett
                                                                  United States Senior District Judge