IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| v. | *   Criminal Action No. RDB-18-0271 |
| MICHAEL WATTS, | * |
| *Defendant.* | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

On January 31, 2019, Defendant Michael Watts ("Defendant" or "Watts") pled guilty to Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). (ECF No. 60.) Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties stipulated in a plea agreement that the appropriate sentence was "within the range of 87 to 108 months" of imprisonment. (*Id.* ¶ 9.) On May 1, 2019, this Court imposed a 108-month (9-year) term of imprisonment with credit for time served since May 17, 2018, to be followed by a 3-year term of supervised release. (ECF No. 97.) Watts is presently 48 years old and incarcerated at the Federal Correctional Institution in Phoenix, Arizona ("FCI Phoenix") with an estimated release date of January 16, 2026.[1] Based on data reported October 2, 2024, there are three cases of COVID-19 at FCI Phoenix.[2]

On May 22, 2020, Watts filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("First Motion for Compassionate Release" or "First Motion") (ECF

---

[1] *See Find an Inmate*, FED. BUREAU OF PRISONS, available at https://www.bop.gov/inmateloc/ (search by register number: 83644-053).
[2] *See Inmate COVID-19 Data*, FED. BUREAU OF PRISONS, available at https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Oct.. 3, 2024).

No. 134 *SEALED*), wherein he cited concerns about the potential spread of COVID-19 at his former place of incarceration and sought his immediate release from prison, or alternatively, transfer to home confinement. The Government opposed Watts's First Motion for Compassionate Release. (ECF No. 139.) On August 17, 2020, this Court DENIED Watts's First Motion. (ECF No. 140.)

Watts subsequently filed a second Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Second Motion for Compassionate Release" or "Second Motion") (ECF No. 146), wherein he asserts that he has certain underlying medical conditions that make him more susceptible to complications from COVID-19. In support of his Second Motion, Watts included two pages from Bureau of Prisons' ("BOP") Health Services entitled "Health Problems" generated February 16, 2021, (ECF No. 147 *SEALED*), and later provided the Court with additional documents: (1) a letter dated July 23, 2021 from FCI Phoenix's Warden addressed to Defendant (ECF No. 149 *SEALED*); (2) a "Plan of Action" setting forth Watts's purported plan in the event his Second Motion for Compassionate Release is granted (ECF No. 150); (3) an inmate report from the BOPs' Health Services generated July 21, 2021 (ECF No. 151 *SEALED*); and (4) a supplement to his Second Motion for Compassionate Release. (ECF No. 151-1 *SEALED*.) While the Government has not filed a response to the Second Motion for Compassionate Release, the Court has reviewed Watts's submissions and finds that a response is not necessary. Additionally, the Second Motion will be decided on the papers without a hearing. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated herein, Watts's Second Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 146) is DENIED.

**BACKGROUND**

The parties stipulated to the underlying facts in Watts's plea agreement. (ECF No. 60 at 9.) On January 22, 2018, Watts and his co-defendants, Orneth South ("South") and Ryan Smith ("Smith"), robbed a Loomis Armored ("Loomis") vehicle parked in Salisbury, Maryland of $1,324,288. (*Id.*) Watts held a gun to the Loomis vehicle driver's ("Driver") head as he was removing cash cassettes from an ATM, disarmed the Driver of his weapon, grabbed him by his hair, and ordered him to open the Loomis vehicle door. (*Id.*) Once the door was open, Watts and his co-defendants removed multiple bags of money from the Loomis vehicle and stole the cash-filled ATM cassettes. (*Id.*) Watts removed zip ties from his clothing, which South then used to secure the Driver's hands within the Loomis vehicle after physically forcing him inside. (*Id.*) Thereafter, Watts and his co-defendants fled to Smith's residence nearby with the stolen bags of money and cash cassettes totaling $1,324,288. (*Id.*)

On May 18, 2018, Watts was arrested in Queens, New York on a warrant issued in relation to the Loomis robbery. (*Id.*) On May 31, 2018, a federal grand jury issued a Superseding Indictment charging Watts and his co-defendants with three counts, namely: (1) conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a); (2) interference with commerce by robbery in violation of 18 U.S.C. § 1951(a); and (3) use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). (ECF No. 25.)

On January 30, 2019, pursuant to a plea agreement, Watts pleaded guilty to Count 2 of the Superseding Indictment, Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). (ECF No. 60.) Under Fed R. Crim. P. 11(c)(1)(C), the parties stipulated that the appropriate sentencing range was between 87 to 108 months as part of his guilty plea. (*Id.* at 5–6). On

May 1, 2019, this Court sentenced Watts to 108 months (9 years) of imprisonment with credit for time served since May 17, 2018, and with a 3-year term of supervised release upon release from imprisonment.  (ECF No. 97.)

On May 22, 2020, Watts filed *pro se* his First Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) wherein he sought his immediate release from prison, or alternately, transfer to home confinement, citing concerns about the spread of COVID-19 at his former place of incarceration and its impact on his health.  (ECF No. 140 *SEALED*.)  Watts's First Motion was opposed by the Government (ECF No. 139), and on August 17, 2020, it was denied by this Court.  (ECF No. 140.)

Later, Watts filed the pending *pro se* Second Motion for Compassionate Release (ECF No. 146) and supplemental filings in support thereof.  (ECF Nos. 147 *SEALED*, 149 *SEALED*, 150, 151 *SEALED*, and 151-1 *SEALED*.)  Therein, Watts asserts that he has certain underlying medical conditions rendering him more susceptible to complications caused by COVID-19.  (ECF No. 146 at 1.)  While the Government has not responded to the Second Motion for Compassionate Release, the Court has determined that no response is necessary.  The Second Motion is ripe for review.

## STANDARD OF REVIEW

Documents filed *pro se* are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).  As Watts was not represented by counsel when he filed his Second Motion for Compassionate Release, a less stringent standard of review applies.

4

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison.  Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons with sole discretion to file compassionate release motions with the Court.  With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence.  The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  The Court may reduce a defendant's term of imprisonment if it finds "extraordinary and compelling reasons" warrant a sentence reduction, the reduction is "consistent with applicable policy statements issued by the Sentencing commission," and that the factors in 18 U.S.C. § 3553(a) "merit a reduction."  18 U.S.C. § 3582(c)(1)(A); *United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020); *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021).

## ANALYSIS

### I. Administrative Exhaustion Requirements.

Watts has satisfied the necessary predicates to filing his Second Motion for Compassionate Release.  To establish that he has exhausted all administrative remedies, Watts submitted the Warden's July 23, 2021, letter denying Watts's internal request for compassionate release. (ECF No. 149 *SEALED*.)  More than thirty days elapsed between the time Watts submitted his request to the Warden and the time he filed the reiteration of his

Second Motion on October 24, 2022.  Accordingly, Watts's Second Motion is properly before this Court.  *See* 18 U.S.C. § 3582(c)(1)(A) (providing that a defendant may file a compassionate release motion once they have exhausted all administrative remedies or thirty days have elapsed since they submitted their request, "whichever is earlier"); *see also United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021) ("The text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden receives his request, regardless of whether the defendant exhausted his administrative remedies.").

## II.  Extraordinary and Compelling Reasons.

Nevertheless, Watts has failed to demonstrate "extraordinary and compelling reasons" for his release.  The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A).  28 U.S.C. § 944(t).  While the district court holds broad discretion in analyzing extraordinary and compelling reasons, it must remain consistent with "applicable policy statements issued by the Sentencing Commission."  *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021); *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir.) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)).  As the Fourth Circuit noted, there had previously been "no applicable policy statements to reference;" however, that changed on November 1, 2023. *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024); *United States v. Robinson*, No. ELH-18-17, 2024 U.S. Dist. LEXIS 81817, at *13 (D. Md. May 6, 2024).

Prior to the November 1, 2023 amendment, the relevant policy statement codified in U.S.S.G. § 1B1.13 read: "Upon motion of the *Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment."  U.S.S.G. § 1B1.13 (2021)

6

(emphasis added). The Fourth Circuit interpreted this language to not include defendant-filed motions. *McCoy*, 981 F.3d at 281 ("When a defendant exercises his . . . right to move for compassionate release on his own behalf, § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of the district courts."). Thus, district courts could "consider any extraordinary and compelling reasons for release." *Id.* at 284 (citation omitted).

Congress amended this policy statement to read: "Upon motion of the Director of Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the current policy statement, which became effective November 1, 2023, applies to defendant-filed motions. *Robinson*, 2024 U.S. Dist. LEXIS 81817, at *14; *Davis*, 99 F.4th at 653–54; *United States v. Taylor*, No. ELH-12-0570, 2023 U.S. Dist. LEXIS 222428, at *9–10 (D. Md. Dec. 14, 2023). The updated language of § 1B1.13 conflicts with *McCoy*'s conclusion—which was based on the pre-amendment language—that the policy statement does not apply. *Robinson*, 2024 U.S. Dist. LEXIS 81817, at *14–15. The amended version of § 1B1.13 consequently does restrict courts to follow its policy statement. *Id.*

As relevant here, U.S.S.G. § 1B1.13 identifies six possible circumstances that viewed separately or together may establish "extraordinary and compelling reasons" for a sentence reduction. These reasons include:

> (1) a serious medical circumstance of the defendant;
> (2) a defendant who is at least 65 years old and suffers from serious health deterioration and has served either 10 years or 75 percent of his or her term;
> (3) the death or incapacitation of an immediate family member
> (4) the defendant being a victim of abuse while in custody;
> (5) other reasons of similar gravity as (1)–(4); and

(6) unusually long sentence if the defendant has served at least ten years.

U.S.S.G. § 1B1.13(b)(1)–(6). The 2023 amendments to U.S.S.G. § 1B1.13, particularly U.S.S.G. § 1B1.13(b)(1)(D), reinforce prior holdings of this Court that a defendant's heightened susceptibility to COVID-19 may constitute an extraordinary and compelling reason for a sentence reduction. *See*, *e.g.*, *Davis*, 99 F.4th at 654. However, as Judge Hollander of this Court has noted, "the coronavirus is 'not tantamount to a get out of jail free card.'" *United States v. Hiller,* No. ELH-18-0389, 2020 WL 2041673, at *4 (D. Md. Apr. 28, 2020) (quoting *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020)). Accordingly, for COVID-19 to constitute an "extraordinary and compelling" circumstance, the defendant must prove that he has a "particularized susceptibility" to COVID-19. *See, e.g., United States v. Petway*, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022). The defendant must also prove that his "risk of contracting COVID-19 is higher in prison than outside of prison." *Davis*, 99 F.4th at 655.

In this case, Watts represents that he has certain medical conditions which make him "more susceptible to contracting a serious or fatal case of COVID-19," namely, "[o]verweight prediabetic conditions[,] [d]ebilitating lung scar tissue[,] [and] [m]ental health issues" for which he is "being treated[.]" (ECF Nos. 146 at 1, 151-1 *SEALED*.)  As part of his *pro se* filings, Watts submitted two sets of additional medical records comprising a total of four pages which indicate that Watts is overweight and prediabetic, and that he has some lung scarring. (ECF Nos. 147 *SEALED*, 151 *SEALED*.)  As this Court noted in its Memorandum Order denying Watts's First Motion for Compassionate Release, "[t]he apparent damage to Watts's lungs would present serious concerns if Watts had presented additional information about this

8

condition or demonstrated a risk of exposure to COVID-19." (ECF No. 140.) Despite Watts's inclusion of the additional medical information as part of his Second Motion for Compassionate Release, the medical data contained in these new medical records does not sufficiently demonstrate any "extraordinary and compelling reasons" warranting his release. Accordingly, compassionate release is not available to him.

### III. Application of 18 U.S.C. § 3553(a).

Even if Watts had presented the requisite "extraordinary and compelling reasons" for a sentence reduction, he would still not be entitled to compassionate release. Once a court has determined the existence of extraordinary and compelling reasons warranting a reduction in Watts's sentence, it must consider whether a sentence reduction is consistent with the applicable 18 U.S.C. § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2); *Robinson*, 2024 U.S. Dist. LEXIS 81817, at *12. These factors require this Court to consider: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants.

As noted in this Court's Memorandum Order denying Watts's First Motion for Compassionate Release (ECF No. 140), a sentence reduction is inappropriate in the instant case after considering the § 3553(a) factors. Watts's criminal history is extensive and produced a criminal category of VI (ECF No. 92 ¶ 53). The nature of the instant offense—Hobbs Act robbery—was violent. Watts admitted in his plea agreement that he robbed a Loomis vehicle

parked in Salisbury, Maryland. (ECF No. 60 at 9.) To accomplish the robbery, Watts placed a gun to the Driver's head, disarmed him of his weapons, grabbed him by his hair, and then ordered him to open the door of the Loomis vehicle. (*Id.*) Watts's extensive criminal history and the nature of the armed robbery underlying the instant conviction thus counsel for the denial of his Second Motion for Compassionate Release. Additionally, upholding Watts's original sentence is also necessary to reflect the seriousness of the offense, to promote respect for the law, to deter criminal conduct, and to protect the public.

## CONCLUSION

Accordingly, it is HEREBY ORDERED that this 8th day of October, 2024, that Defendant's Second Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 146) is DENIED.

/s/
Richard D. Bennett
United States Senior District Judge