**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNIVERSITY OF MARYLAND** | * |
| **EASTERN SHORE NATIONAL** | * |
| **ALUMNI ASSOCIATION, INC.** | * |
| | * |
| **Plaintiff** | * |
| | * |
| v. | *    Case No. 1:23-CV-02141-RDB |
| | * |
| **SCHULTE HOSPITALITY GROUP, INC.*** | |
| | * |
| **Defendant** | * |

_____

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES, REQUEST FOR**
**EXTENSION OF PLAINTIFF'S EXPERT DISCLOSURE DEADLINE, AND REQUEST**
**FOR EXTENSION OF THE DEADLINE TO ADD PARTIES**

Plaintiff University of Maryland Eastern Shore National Alumni Association, Inc. files this

Motion to Compel Discovery Responses, Request for Extension of Plaintiff's Expert Disclosure

Deadline, and Request for Extension of the Deadline to add Parties, and states as follows:

## I.    MOTION TO COMPEL

### A.    Certificate of Conference.

1.    On July 24, 2025, Plaintiff's counsel, John T. Brennan, and Defendant's counsel,

Cynthia L. Maskol, held a meet and confer via Zoom to discuss issues relating to both parties'

discovery responses. This meeting was held in good faith; however, many of the issues remain

unresolved. Please see Sec. I(E) below for the pending issues that require resolution by the Court.

### B.    Background.

2.    In November 2024, Plaintiff served its discovery requests on Defendant. Shortly

thereafter, this Court stayed all discovery until ADR was completed. *See* Dkt. 28. On May 7, 2025,

the discovery stay was lifted. *See* Dkt. 32. Defendant responded to Plaintiff's discovery on July 1,

2025 (interrogatories) and July 14, 2025 (production of documents). However, Defendant's responses were inadequate.[1]

3. Pursuant to LR. 104.7(a), Plaintiff sent Defendant a memorandum identifying the deficiencies of Defendant's responses on July 17, 2025. *See* Exhibit A. On July 24, 2025, Counsel for Plaintiff and Defendant held a meet and confer via Zoom to discuss both parties' claims of discovery deficiencies. Although Defendant had indicated that it would respond to Plaintiff's deficiencies by letter on or before August 1, 2025, Defendant did not do so and instead sent amended responses on August 11, 2025. *See* Exhibit B & C. While this amendment cured some deficiencies, many remain. As such, Plaintiff has no choice but to file this motion to compel.

## C. Legal Standards.

### a. Defendant's responses subject to its objections are inappropriate unless Defendant explains how the objection limited the response.

4. Many of Defendant's responses are made "subject to" their objections without Defendant's explaining to what extent it is refusing to comply with the request. This specific practice was condemned by another Federal District Court in the 4th Circuit. In *Brown v. Experian Information Solutions, Inc.,* 2017 WL 11632852 (E.D.Va. April 17, 2017), the District Court required Experian to supplement all its "subject-to" responses because its responses were confusing, misleading, and amounted to no answer at all.[2] Further, other federal courts have also denounced this practice. In *Ochoa v Empresas*, the Court stated "[i]t has become common practice for a Party to object on the basis of any of the above reasons, and then state that 'notwithstanding the above,' the party will respond to the discovery request, subject to or without waiving such

---

[1] In addition to the issues described in this motion, Defendant failed to produce documents it maintained at the time of the events in question claiming that it had lost access to them when the owner of the hotel (which Defendant has never named) terminated its engagement as property manager and installed a new property manager (also unnamed).

[2] *Brown v Experian Information Solutions, Inc.* 2017 WL 11632852 at *2 (E.D. Va April 17, 2017).

objection. Such an objection and answer preserves nothing and serves only to waste the time and resources of both the Parties and the Court. Further, such practice leaves the requesting party uncertain as to whether the question has actually been fully answered or whether only a portion of the question has been answered."[3] Another court stated that "[t]he Court here is also concerned about DSI's practice of objecting and then responding 'without waiving the objection.' That it is a common practice does not make it acceptable. It was expressly disapproved by this Court nearly a decade ago. As Russell here argues, DSI's partial answers given 'subject to' its stated boilerplate objections confuse the issue whether the requested information was provided in full."[4] And, yet another court stated "[h]ere, Hunt has attempted to both object and produce, but produce only 'subject to and without waiving' its objections. [Federal] Rule 34 makes no provision for this sort of response. A party may object to some or all of the requested discovery, but it must be clear whether the responding party is objecting or not and, if objecting, to what part of the request and on what specific grounds."[5] Further, this practice violates Rule 34(b)(2)(C) because each "objection must state whether any responsive materials are being withheld on the basis of that objection." Moreover, the rule also states that "[a]n objection to part of a request must specify the part and permit inspection of the rest." *Id.* Plaintiff is entitled to know what, if any, information or documents are being withheld.

      **b. Defendant's additional explanations for its objections are waived and cannot support said objections.**

5. Defendant incorporated all of its original objections and grounds for those objections in its amended responses to discovery. However, Defendant impermissibly attempted

---

[3] *Ochoa v. Empresas ICA, S.A.B. de C.V.*, No. 11-23898- CIV SEITZ/SIMONTON, 2012 U.S. Dist. LEXIS 111182, at *4 (S.D. Fla. Aug. 8, 2012).

[4] *Russell v. Daiichi-Sankyo, Inc.*, No. CV 11-34-BLG-CSO, 2012 U.S. Dist. LEXIS 49161, at *10 (D. Mont. Apr. 6, 2012).

[5] *Leisure Hospitality, Inc. v. Hunt Props., Inc.*, No. 09-CV-272-GKF-PJC, 2010 U.S. Dist. LEXIS 93680, at *9–10 (N.D. Okla. Sept. 8, 2010).

to add details for its objections in these amended responses. Federal Rule of Civil Procedure 33(b)(4) states that "All grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown."

### c. Specificity.

6. The Federal Rules of Civil Procedure provide that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Moreover, "[t]he grounds for objecting to an interrogatory must be stated with specificity." *Id.* at (4). "In other words, objections to interrogatories must be specific, non-boilerplate, and supported by particularized facts where necessary to demonstrate the basis for the objection." *Lynn v. Monarch Recovery Management, Inc.,* 285 F.R.D. 350, 356 (D. Md. 2012). Further, each objection to a request for production must "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Moreover, "[a]ll objections to document production requests must be stated with particularity and specificity; objections may not be boilerplate." *Lynn,* 285 F.R.D. at 360.

### d. Boilerplate Objections.

7. In *Mezu v. Morgan State University,* Judge Paul W. Grimm found that the following was a boilerplate objection: "Defendant objects to the interrogatory because it is overly broad and requests information beyond the scope of the two counts remaining in the case and is not reasonably calculated to lead to the discovery of admissible evidence relevant to the two remaining counts in the case. Moreover, the request contains more than one request...." *Mezu v. Morgan State University,* 269 F.R.D. 565, 573 (D. Md. 2010). Further, *Mezu* found that this response violated Local Rule 104.6. *Id.* Additionally, "[b]ecause Defendant did not provide specific objections supported by particularized facts, it waived its improperly-raised objections." *Id.* at 574.

8. In *Hall v. Sullivan,* Judge Paul W. Grimm stated, "It is unclear from the record when CBDD answered Mr. Hall's Second Request, however, it is clear that when they did respond, they objected to it on several conclusory grounds, specifically that the request was: (1) overbroad and unduly burdensome, (2) beyond the scope of discovery, (3) vague and ambiguous because the documents sought were not identified with particularity, (4) protected by the attorney-client privilege of third-parties, and (5) protected by the attorney work product doctrine. These are classic boilerplate objections of the type that have been condemned by courts and commentators for years because they fail to particularize the basis for the objections, and inevitably result in delay and expense, and promote disputes between counsel that require court resolution." *Hall v. Sullivan,* 231 F.R.D. 468, 470 (D. Md. 2005).

9. "Rule 26(g) also was enacted over twenty-five years ago to bring an end to the equally abusive practice of objecting to discovery requests reflexively—but not reflectively—and without a factual basis. The rule and its commentary are starkly clear: an objection to requested discovery may not be made until after a lawyer has 'paused and consider[ed]' whether, based on a 'reasonable inquiry,' there is a 'factual basis [for the] ... objection.' Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments. Yet, as in this case, boilerplate objections that a request for discovery is overboard and unduly burdensome, and not reasonably calculated to lead to the discovery of material admissible in evidence, … persist despite a litany of decisions from courts, including this one, that such objections are improper unless based on particularized facts."[6]

---

[6] *Mancia v. Mayflower Textile Servs. Co.,* 253 F.R.D. 354, 358-59 (D. MD 2008) (citing *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D.Cal.2006); *Hall*, 231 F.R.D. at 470; *Wagner v. Dryvit Sys. Inc.*, 208 F.R.D. 606, 610 (D.Neb.2001) (citing *Roesberg v. Johns–Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D.Pa.1980)); *Thompson v. HUD,* 199 F.R.D. 168, 173 (D.Md.2001); *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 38 (D.Md.2000) (citing *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 498 (D.Md.2000) (citations omitted); *Kelling v. Bridgestone/Firestone, Inc.*, 157 F.R.D. 496, 497 (D.Kan.1994); *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 182–83 (E.D.Ca.1991); *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F.Supp. 1429, 1439–40 (D.Del.1989)); *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D.Pa.1996);

"It would be difficult to dispute the notion that the very act of making such boilerplate objections is prima facie evidence of a Rule 26(g) violation, because if the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness or excessive cost of the discovery request, he or she should have disclosed them in the objection, as both Rule 33 and 34 responses must state objections with particularity, on pain of waiver."[7]

### e.  "Overly broad and burdensome" objections.

10. Rule 26(b)(1) addresses the scope of discovery requests. It states, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." As such, to preclude an overly broad objection from being considered a boilerplate objection, the objecting party must explain,

---

*Obiajulu v. City of Rochester, Dept. of Law*, 166 F.R.D. 293, 295 (W.D.N.Y.1996); *Harding v. Dana Transport, Inc.*, 914 F.Supp. 1084, 1102 (D.N.J.1996)).

[7] *Id* at 359 (citing Fed R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); see also *Beverly v. Depuy Orthopaedics, Inc.*, No. 3:07–CV–137 AS, 2008 WL 45357, at *2 (N.D.Ind.2008) ("An underdeveloped argument, or argument not raised at all, is a waived argument."); *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C.2008) ("When faced with general objections, the applicability of which to specific document requests is not explained further, '[t]his Court will not raise objections for [the responding party],' but instead will 'overrule[ ] [the responding party's] objection[s] on those grounds.' ") (quoting *Tequila Centinela*, S.A. de C.V. v. Bacardi & Co., Ltd., 242 F.R.D. 1, 12 (D.D.C.2007)); *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535, 538 (D.C.Kan.2006) ("The Court ... holds that a general objection which objects to a discovery request 'to the extent' that it asks the responding party to provide certain categories of documents or information is tantamount to asserting no objection at all. In other words, such a general objection does not preserve the asserted challenge to production."); *Hall,* 231 F.R.D. at 473–74 (objections to Rule 34 document production requests must be stated with particularity or are waived); *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 660–61 (D.Kan.2004) ("This Court has on several occasions disapproved of the practice of asserting a general objection 'to the extent' it may apply to particular requests for discovery. This Court has characterized these types of objections as worthless for anything beyond delay of the discovery. Such objections are considered mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery. Thus, this Court has deemed such ostensible objections waived or [has] declined to consider them as objections.") (quoting *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 666–67 (D.Kan.2004) (internal quotations and citations omitted))).

not just aver, how the discovery request violates this rule. Moreover, to take an undue burden objection from boilerplate to appropriately specific, the resisting party must describe its burden in responding to the request and explain how that burden outweighs any likely benefit of the request. "Of course, there are other grounds, such as burdensomeness, upon which a party can resist even relevant discovery. While R & H has complained generally about the burdensomeness of such a discovery request (Paper No. 86, 8), R & H has not demonstrated that burden with the requisite specificity and formal affidavit." *United Oil Co., Inc. v. Parts Associates, Inc.,* 227 F.R.D. 404, 413 (D. Md. 2005). Further, with respect to assertions of unreasonable burden or expense, as well as privilege as a basis to refuse requested discovery, Rule 26(b)(5) of the Federal Rules of Civil Procedure and Discovery Guideline 9(c), see Local Rule App. A, impose an affirmative duty on the objecting party to particularize with facts, not conclusory statements, the basis for these objections." *Marens v. Carrabba's Italian Grill, Inc.,* 196 F.R.D. 35, 38 (D .Md. 2000).

### f. Ambiguous.

11. A discovery request is vague or ambiguous where the request's wording is such that it is uncertain what information or documents have been sought.[8] Moreover, "[a] party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories.... If necessary to clarify his answers, the responding party may include any reasonable definition of the term or phrase at issue."[9]

---

[8] BLACK'S LAW DICTIONARY 93, 1689 (9th ed. 2009) (defining "ambiguity" and "ambiguous" as "[a]n uncertainty of meaning or intention" and "vague" as "imprecise . . . ; uncertain"); MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 36, 1304 (10th ed. 1997) (defining "ambiguous" as "doubtful or uncertain" or "capable of being understood in two or more possible senses or ways" and "vague" as "not clearly expressed: stated in indefinite term" or "not having precise meaning").
[9] *Patrick v. Teays Valley Trustees, LLC,* 297 F.R.D. 248, 257 (N.D. W.Va. Dec. 12, 2013).

### g.  Compound.

12. "Fed. R. Civ. P. 33(a)(1) provides that 'a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.' An interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question, … Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related is to examine whether the first question is primary and subsequent questions are secondary to the primary question.... Genuine subparts should not be counted as separate interrogatories." *Mezu v. Morgan State University,* 269 F.R.D. 565, 572-73 (D.Md. 2010).

### h.  Relevance.

13. "The Federal Rules of Civil Procedure permit parties to 'obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.' For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. The relevant information sought need not be admissible at ... trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Hake v. Carroll County, Md.,* 2014 WL 3974173 (D. Md. 2014). To maintain this objection, the resisting party must specify why the requested information does not appear to be reasonably calculated to lead to the discovery of admissible evidence.

### i.  Documents or information already in the possession of the requesting party.

14. "It is not a valid objection to state the requested information is already in the requesting party's control." *Wagner v. St. Paul Fire & Marine Ins. Co.,* 238 F.R.D. 418, 427 (N.D. W. Va 2006).

### j.  Assumes facts not in evidence.

15. Plaintiff was unable to find any authority regarding this objection. However, this objection is inappropriate because nothing has been admitted into evidence.

### D. Regarding Defendant's objection due to vagueness of "subject matter of this dispute."

16. Defendant objected to the vagueness of "subject matter of this dispute." The Complaint already identifies the subject matter of the dispute, but as a further accommodation, Plaintiff specifically defined this phrase in its deficiency letter. *See* Exhibit A at pp6-7.

### E. Deficiencies with specific discovery requests.

#### a. Interrogatory No. 2.

17. Plaintiff's interrogatory states, "Identify and describe each communication you have had with Plaintiff from February 1, 2020, to the present. For each communication, your answer must include, but is not limited to: a) the identity of all parties involved in the communication; b) the date of the communication; c) the method of the communication (i.e. in person, by phone, via text, instant message, etc.); d) the substance of the communication; e) the identity of all witnesses to the communication; and f) the identity of any documents supporting your contentions in this response." *See* Exhibit B at p6.

18. Defendant's original objection states, "Defendant objects to this Interrogatory on the grounds that it is overly broad, ambiguous, subject to multiple interpretations, combines multiple interrogatories, and seeks information that is not relevant to either party's claims or defenses or proportionate to the needs of this case." *Id.*

19. Defendant's supplemental objection states, "Defendant incorporates by reference the Supplemental Specific Objections set forth in its Supplemental Answer to Interrogatory 1, above. Additionally, Defendant objects because Interrogatory 2 seeks information from a corporation describing communications: (a) that Plaintiff was a party to and are already within its possession/knowledge, (b) about matters unrelated to the dispute or allegations in this case, and

9

(c) for a period of time encompassing more than 2 years prior to the first date on which any discriminatory conduct has been alleged." *Id.* at pp6-7.

20. Defendant's amended response states, "For the reasons set forth above, Defendant's objections did limit its Answer. Defendant has accurately Answered that it is currently in possession of no information about verbal communication with Plaintiff discussing the February 26, 2022 offer. Defendant is aware of one email communication on February 26, 2022 from Ms. Shea extending that offer, and one email communication from Ms. Wallop on March 3, 2022 accepting that offer (both of these documents were produced by Plaintiff). Defendant supplements that it has now learned of a verbal communication on December 8, 2022 during which Ms. Wheatley and Ms. Shea presented the offer approved Defendant's revenue management team to Ms. Wallop and described by her in her complaint to Marriott Corporation that same day (SCHULTE0051). Defendant is additionally now aware of a verbal communication on March 7, 2023 between David Hiatt and Ms. Wallop, during which the reason for the December 8, 2022 offer was explained to her, and an email communication dated April 5, 2023 Mr. Hiatt to Ms. Wallop reextending the December 8, 2022 offer (again, never accepted by Plaintiff). Defendant has identified all discoverable evidence and facts in its possession at this time responsive to this Interrogatory and its sub-parts." *Id.* at p7.

21. Defendant's response is deficient for the following reasons: a) while Defendant explains why its response is limited, it does not explain how its objections limited its response; b) the objections are typical boilerplate objections; c) the required grounds and reason for the objections are omitted from the original objection; d) the supplemental grounds for its original objections are waived; e) the new objection that this information is within Plaintiff's possession is not only waived, its an improper objection; and f) the time period is relevant because seeking

communications going back to 2020 establishes the baseline of how Defendant treated Plaintiff before Ms. Shea's involvement in the process, and it could lead to evidence of Defendant's willful and knowing conduct as alleged in the Complaint. Finally, Defendant did not provide the substance of these communications, forcing Plaintiff to file a motion to compel or seek these details in a deposition. The rules do not allow for this type of avoidance. Plaintiff requests that this Court overrule Defendant's objections and order Defendant to provide a non-limited and complete response.

### b. Interrogatory No. 3.

22. Plaintiff's request states, "Identify all agreements that you had with Plaintiffs. For each agreement, your answer should include but are not limited to: a) the identity of the location subject to the agreement; b) the terms of the agreement; b) the date that the agreement was made; c) the identity of your representative who made the agreement; d) the identity of all witnesses to your contentions in the response; and d) the identity of all documents supporting your contentions in this response." *Id.*

23. Defendant's original objection states, "Defendant objects to this Interrogatory on the grounds that it is overly broad and burdensome, ambiguous, combines multiple interrogatories, seeks information that is not relevant to either party's claims or defenses or proportionate to the needs of this case, and seeks information already within Plaintiff's custody and control (inasmuch as Plaintiff was a party to any agreement)." *Id.* at pp7-8.

24. Defendant's supplemental objection states, "Defendant incorporates by reference the Supplemental Specific Objections set forth in its Supplemental Answer to Interrogatory 1, above. Additionally, Interrogatory 3 asks a corporation to identify and describe all contracts with Plaintiff (documents already in Plaintiff's possession, to which Plaintiff was a party, and that

11

would speak for themselves); however, the only contract alleged by Plaintiff to have been negotiated discriminatorily is the group booking agreement for November 2022. That contract was produced by Plaintiff and reflects that it was offered on February 26, 2022, promised to hold 66 rooms at the Salisbury Courtyard Marriott at a rate of $98/night on November 10, 11, and 12, 2022." *Id.* at p8.

25. Defendant's supplemental response states, "For the reasons set forth above, Defendant's objections did limit its Answer. Defendant now supplements that it is aware of banquet room offers at the Salisbury Courtyard by Marriott, extended by Ms. Shea on October 12, 2022 for November 11, 2022 ($175.00) and November 12, 2022 ($200.00). These documents were produced by Plaintiff. Defendant has been unable to verify whether the 2022 banquet room offers were ever accepted. Defendant is additionally aware of a group booking agreement offered to Plaintiff by Ms. Shea on January 20, 2021, agreeing to hold 20 rooms at the Salisbury Courtyard by Marriott on November 11, 2021 at the rate of $95/night, and 50 rooms on November 12 and 13, 2021 at the rate of $95/night. Defendant is additionally aware of an email from Ms. Shea to Ms. Wallop on September 15, 2021 offering to block 20 rooms on November 14, 2021 at the rate of $95/night. Plaintiff produced documents reflecting each of the aforementioned offers. Although Defendant has been unable to verify any contract formed in 2021 in response to these offers, it does not dispute that the 2021 offers were honored. Defendant has identified all discoverable evidence and facts in its possession at this time responsive to this Interrogatory and its sub-parts." *Id.* at pp8-9.

26. Defendant's response is deficient for the following reasons: a) while Defendant explains why its response is limited, it does not explain how its objections limited its response; b) the objections are typical boilerplate objections; c) the required grounds and reason for the

objections are omitted from the original objection; d) the objection that this information is in Plaintiff's possession is not a valid objection; e) the supplemental grounds for its original objections are waived; f) it is inappropriate for Defendant to unilaterally decide that only one agreement is relevant; h) all contracts are relevant because they establish the baseline of how Defendant treated Plaintiff before and after Ms. Shea's involvement in the process and it could lead to evidence of Defendant's willful and knowing conduct as alleged in the Complaint. Plaintiff requests that this Court overrule Defendant's objections and order Defendant to provide a non-limited response.

### c. Interrogatory No. 10.

27. Plaintiff's request states, "Identify and describe your oversight and review of Ms. Shea's job performance since 2020 to the present. Your answer should include, but not be limited to: a) whether you have any policies in overseeing and reviewing the job performance of employees; b) whether you followed those procedures and policies with Ms. Shea; c) identify the dates that Ms. Shea's job performance or interaction with customers was reviewed; d) describe how job performance takes place; e) describe whether Ms. Shea's supervisor was able to monitor Ms. Shea's interaction with customers; f) the identity of all witnesses to your contentions in the response; and g) the identity of all documents supporting your contentions in this response." *Id.* at p16.

28. Defendant's original objection states, "Defendant objects to this Interrogatory on the grounds that it is overly broad, ambiguous and subject to multiple interpretations, combines multiple interrogatories, and seeks information that is not relevant to either party's claims or defenses or proportionate to the needs of this case." *Id.*

29. Defendant's supplemental objection states, "Defendant incorporates by reference the Supplemental Specific Objections set forth in its Supplemental Answer to Interrogatory 1, above. Additionally, Interrogatory 10 seeks information about Defendant's oversight and review of the job performance of Ms. Shea, which could not likely or intended to lead to the discovery of admissible facts or evidence in this litigation (and can only be intended to harass, intimidate, or embarrass Ms. Shea), inasmuch Ms. Shea had no authority or discretion to determine the group booking offers communicated to Plaintiff on either February 26, 2022 or December 8, 2022." *Id.* at p17.

30. Defendant's supplemental response states, "The foregoing objections did limit Defendant's Answer to this Interrogatory. Defendant stands by its original Answer and clarifies/adds that throughout her period of employment, Ms. Shea was an exempt management level employee who reported to both the General Manager(s) for the Properties and Regional Director of Sales Brad Marsico, and that guest interaction was never a function of her job or a measure of her performance. The Company's Performance Evaluation process takes place annually in or around March, or as business needs dictate. Ms. Shea's overall rating on every evaluation was either exceeds expectations or meets expectations, and alleged discrimination was never indicated. Defendant has identified all discoverable evidence and facts in its possession at this time responsive to this Interrogatory and its sub-parts." *Id.* at p17.

31. Defendant's response is deficient for the following reasons: a) while Defendant explains why its response is limited, it does not explain how its objections limited its response; b) the objections are typical boilerplate objections; c) the required grounds and reason for the objections are omitted from the original objection; d) the supplemental grounds for its original objections are waived; e) contrary to Defendant's claim, this information could lead to

discoverable information because knowing how Shea was supervised may lead to the discovery of new culpable parties and/or the location of additional witnesses or documents that would support Plaintiff's claim and it could lead to evidence of Defendant's willful and knowing conduct as alleged in the Complaint; and f) it is inappropriate for Defendant to ask Plaintiff to trust it when it says that Shea had no authority or discretion—Plaintiff and the guests at the hotels in question have no idea of the private policies of the hotel manager—they merely deal with the persons they encounter who have apparent authority and the persons to whom they are directed. Plaintiff requests that this Court overrule Defendant's objections and order Defendant to provide a non-limited response.

### d. Request for Production No. 11.

32. Plaintiff's request seeks "All written communications or internal documents pertaining in any way to Ms. Shea complaining about Plaintiff or Plaintiff's members." *See* Exhibit C at p9.

33. Defendant's original objection states, "Defendant objects to this Request on the grounds that it is overly broad, ambiguous because the "Plaintiff's members" are undefined, and assumes facts not in evidence." *Id.*

34. Defendant's supplemental response states, "The subject matter of this dispute is whether group booking offers at Salisbury Courtyard by Marriott approved by Defendant's revenue management team and communicated to Plaintiff on February 26, 2022 and December 8, 2022) were motivated by Plaintiff's imputed race and proximately caused a revenue loss in November 2023. Defendant's objections are self-explanatory and were specified. Any complaint prior to the alleged period of discrimination is overly broad. The ambiguity arises from the fact that the identity of Plaintiff's "members" is not known to Defendant. Additionally, the Request is

not intended or likely to lead to the discovery of admissible evidence in this case, because Ms. Shea did not determine the allegedly discriminatory group offer. These objections did limit Defendant's search to communications or documents depicting or discussing a complaint made by Ms. Shea about any guest/customer of Salisbury Courtyard by Marriott between November 20, 2021 (Homecoming 2021) and December 8, 2022, and Defendant's original Response accurately reports that it identified no responsive document." *Id.*

35. Defendant's response is deficient for the following reasons: a) while Defendant explains why its response is limited, it does not explain how its objections limited its response; b) Defendant inappropriately narrows the definition for "subject matter" that Plaintiff provided in its deficiency letter; c) Defendant's claim that its objections are self-explanatory does not meet the specificity requirements; d) Defendant's claim that Plaintiff's members are unknown is not accurate because it provided document SCHULTE0026 (Exhibit D), which contains the names of thirty (30) individuals who are Plaintiff's members; e) it is not appropriate for Defendant to unilaterally claim that Ms. Shea did not determine the group offer; and f) the additional grounds for Defendant's original objections are waived due to untimeliness. Plaintiff requests that this Court overrule Defendant's objections and order Defendant to provide a non-limited response.

e. **Request for Production No. 12.**

36. Plaintiff's request seeks, "All written communications between you and Patricia Shea regarding any complaint about Ms. Shea's interactions with your guests, potential guests, and/or other employees." *Id.*

37. Defendant's original objection states, "Defendant objects to this Request on the grounds that it is overly broad, assumes facts not in evidence, and seeks information that is not

relevant to either party's claims or defenses and/or is not proportionate to the needs of the case." *Id.* at pp9-10.

38. Plaintiff's supplemental response states, "The subject matter of this dispute is whether group booking offers at Salisbury Courtyard by Marriott approved by Defendant's revenue management team and communicated to Plaintiff on February 26, 2022 and December 8, 2022 were motivated by Plaintiff's imputed race. Defendant's objections are self-explanatory and were specified. Ms. Shea did not determine the allegedly discriminatory group offer. The discovery of any complaint made by a guest about Ms. Shea outside the discriminatory period alleged by Plaintiff or that does not allege discrimination could, therefore, not be intended or likely to lead to the discovery of admissible evidence in this litigation. These objections did limit Defendant's search to documents depicting or discussing any complaint made by a guest of the Salisbury Courtyard by Marriott about Ms. Shea between November 20, 2021 (Plaintiff's Homecoming 2021) and December 8, 2022 (the last time Ms. Shea ever communicated with Plaintiff), and Defendant's original Response accurately states that it identified no responsive document." *Id.* at p10.

39. Defendant's response is deficient for the following reasons: a) while Defendant explains why its response is limited, it does not explain how its objections limited its response; b) Defendant inappropriately narrows the definition for "subject matter" that Plaintiff provided in its deficiency letter; c) Defendant's claim that its objections are self-explanatory does not meet the specificity requirements; d) it is not appropriate for Defendant to unilaterally claim that Ms. Shea did not determine the group offer; e) this request is not irrelevant because any communications between Ms. Shea and Defendant about Shea's complaints of customers could lead to communications that show how Shea treats people of color differently, as well as Defendant's

17

knowledge of this prejudice, and it could lead to evidence of Defendant's willful and knowing conduct as alleged in the Complaint; and f) the additional grounds for Defendant's original objections are waived due to untimeliness. Plaintiff requests that this Court overrule Defendant's objections and order Defendant to provide a non-limited response.

### f.    Request for Production No. 13.

40. Plaintiff's request states, "Please produce Patricia Shea's entire employment file." *Id.*

41. Defendant's original objection states, "Defendant objects to this Request on the grounds that it is overly broad, seeks information that is not relevant to either party's claims or defenses and/or is not proportionate to the needs of the case, seeks private and privileged information about a non-party, and seeks to violate a non-party's reasonable expectation of privacy." *Id.*

42. Defendant supplemental response states, "The dispute in this case turns on whether group booking offers approved by Defendant's revenue management team and communicated to Plaintiff on February 26, 2022 and December 8, 2022 were motivated by Plaintiff's imputed race. Ms. Shea did not determine the alleged discriminatory group booking offers. Irrespective of their relevance, Plaintiff has admitted that all allegations made by it against Ms. Shea are supported exclusively by verbal/text statements initiated by a disgruntled former employee on the same day she was terminated by Defendant for cause. Defendant has verified that no information or document exists supporting the false statements made by that former employee as adopted and realleged by Plaintiff. For these reasons, this Request is overly broad (both time and scope of employment records) and cannot lead to the discovery of any admissible evidence in this case. False allegations and improper motive to slander the employee who requested but did not

determine the group booking offers made on either February 26, 2022 and December 8, 2022 cannot outweigh Defendant's duty to protect the privacy expectations of Ms. Shea to the information contained in her personnel file. The foregoing objections limited the discoverability and production of Ms. Shea's employment file. In determining whether it is appropriate to compel the discovery of personnel files, courts in the Fourth Circuit balance the importance of personal privacy against the countervailing interest in discovery. See *Kirkpatrick v. Raleigh County Bd. of Educ.,* 1996 U.S. App. LEXIS 3384 (4th Cir. W. Va. Feb. 29, 1996); *Blount v. Wake Elec. Membership Corp.,* 162 F.R.D. 102, 105 (E.D.N.C. 1993). The test generally favors non-disclosure and personnel files, even if relevant, are only discoverable in "limited circumstances," such as when the "need for disclosure is compelling because the information sought is not otherwise readily available." *United States EEOC v. McCormick & Schmick's Seafood Rests.,* No. DKC-11-2695, 2012 U.S. Dist. LEXIS 115673 at *9 (D. Md. Aug. 16, 2012); *Bennett v. CSX Transp., Inc.,* No. 5:10-CV-00493-BO, 2011 U.S. Dist. LEXIS 110669 at *28 (E.D.N.C. Sept. 26, 2011). *See also, Am. Federation of State v. Social Sec. Admin.,* 771 F.Supp.3d 717, 781-82 (D. Md. 2025)(Toomer v. Garrett, 155 N.C.App. 462, 574 S.E.2d 76 (2002)("The unauthorized examination of the contents of one's personnel file, especially where it includes sensitive information such as medical diagnoses and financial information, like the unauthorized opening and perusal of one's mail, would be highly offensive to a reasonable person.")." *Id.* at pp10-12.

43. Defendant's response is deficient for the following reasons: a) Defendant inappropriately narrows the definition for "subject matter" that Plaintiff provided in its deficiency letter; b) it is immaterial whether Plaintiff admitted that all evidence against Shea are supported exclusively by verbal or text statements because evidence of Shea's prejudicial treatment of people of color may be located in her employee file; c) Plaintiff cannot take Defendant's word that it has

verified that no information or document exists to support Plaintiff's false statements about Shea; d) Plaintiff cannot take Defendant's word on what motived or determined the group booking offers; e) this request is not irrelevant for reasons stated above; and g) the additional grounds for Defendant's original objections are waived due to untimeliness.

44. Further, Defendant's reliance on *Kirkpatrick* and *Blount* is misplaced. In *Kirkpatrick,* the Court considered an appeal wherein "Kirkpatrick alleged in her complaint that she was constructively discharged based on her race and age." 1996 WL 85122 at *1 (4th Circ. W.Va. Feb. 29, 1996). Kirkpatrick's complaint was against the principal and assistant principal. *Id.* During litigation, Kirpatrick filed a "motion for production of information from other teachers' personnel files[.]" *Id.* at *2. The district court denied this request, and Kirpatrick appealed. *Id.* In evaluating the district court's decision, the *Kirpatrick* Court acknowledged that the "parties may obtain discovery as to any non-privileged matter that is relevant to the subject matter involved in the pending action or information that appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* (internal quotes omitted). The Court affirmed the district court because "Kirkpatrick never established the relevance of personnel files of other teachers under this rule." *Id.* However, this is not the case in this matter. Plaintiff is not seeking the personnel files of individuals not involved in this dispute, as Kirpatrick did when requesting the files of teachers that had nothing to do with her treatment by the administration. Rather, Plaintiff seeks the personnel file of Shea, the person whom a co-worker specifically identified as a wrongdoer in this matter. Plaintiff seeks punitive damages, which requires that Defendant acted intentionally, knowingly, and willfully. Understanding the contents of Shea's personnel file is reasonably calculated to lead to the discovery of evidence of this level of conduct.

20

45. In *Blount,* a North Carolina District Court considered the plaintiff's motion to compel the production of the personnel file of one of the defendants. *Blount v. Wake Elec. Membership Corp.,* 162 F.R.D. 102, 105 (E.D.N.C. 1993). The *Blount* Court ruling was as follows: "Defendants are ORDERED to produce the personnel files of Defendant Stuart Champion." *Id.* at 106. The Court's reasoning was two-pronged. First, Plaintiff averred a negligence claim against Champion and the Court found that "[i]n an action based upon negligent ***or otherwise improper performance of an employee's duties***, the relevance requirement is generally satisfied by the fact that the personnel file and employee evaluations should indicate the training, experience, work record, and qualifications of the employee." *Id.* at 106 (emphasis added). Second, the fact that the same information in the personnel file could be obtained in a deposition was "not sufficient to defeat Plaintiff's claim of compelling need for the personnel files. The evaluations and other information in Champion's file were contemporaneous and made without litigation in mind. Thus, the personnel files possess an inherent reliability which cannot now be duplicated through any other source, especially through the depositions of Defendant Champion and his supervisor, both employees of Defendant Wake Electric." *Id.* The logic in *Blount* applies to this matter. Plaintiff is seeking the personnel file of Shea, who is alleged to have violated Federal nondiscrimination law in the performance of her employee duties. Further, the reliability of the information contained in these files cannot be duplicated via deposition questions.

46. Plaintiff requests that this Court overrule Defendant's objections and order Defendant to provide a Shea's personnel file.

**g.  Request for Production No. 14.**

47. Plaintiff's request seeks "All documents received from or provided to any third party related to the subject matter of this dispute, whether provided informally or in response to a

formal request, including without limitation documents received in response to any subpoena duces tecum in this action." *See* Exhibit C at p12.

48. Defendant's original objection states, "Defendant objects to this Request on the grounds that it combines multiple interrogatories [sic] and is ambiguous because the 'subject matter of this dispute' is undefined and subject to multiple interpretations." *Id.*

*49.* Defendant's supplemental response states, "The subject matter of this dispute is whether group booking offers at Salisbury Courtyard by Marriott approved by Defendant's revenue management team and communicated to Plaintiff on February 26, 2022 and December 8, 2022 were motivated by Plaintiff's imputed race. Defendant's objections are, therefore, self-explanatory and limited its Response to the relevant subject matter and alleged discriminatory period. Defendant served its Response to this Request on July 14, 2025, accurately reporting that it is currently in possession or control of no document responsive to this Request." *Id.*

50. Defendant's response is deficient for the following reasons: a) Defendant inappropriately narrows the definition of "subject matter" that Plaintiff provided in its deficiency letter; and b) Defendant's claim that its objections are self-explanatory does not meet the specificity requirements. Plaintiff requests that this Court overrule Defendant's objections and order Defendant to provide a non-limited response.

**h.  Request for Production No. 15.**

51. Plaintiff's request seeks "Documents sufficient to demonstrate any civil action against you relating in any way to discrimination within the past ten (10) years." *Id.* at p13.

52. Defendant's original objection states, "Defendant objects to this Request on the grounds that it is ambiguous, overly broad, seeks information that is not relevant to either party's claims or defenses, and/or is not proportionate to the needs of the case." *Id.*

53. Defendant's supplemental response states, "The subject matter of this dispute is whether group booking offers at Salisbury Courtyard by Marriott approved by Defendant's revenue management team (falsely attributed to Patricia Shea) and communicated to Plaintiff on February 26, 2022 and December 8, 2022 were motivated by Plaintiff's imputed race. Defendant's objections are self-explanatory. The Request seeks information pertaining to unrelated litigants, alleged claims, alleged injuries, properties, employees, types of discrimination, and for a period several years beyond the discriminatory period alleged in this case. These requested documents could not be intended or likely to lead to the discovery of any admissible evidence in this case. Defendant has volunteered that other than this lawsuit, it has never been a party to any lawsuit in which Ms. Shea (the bad actor falsely accused in this lawsuit) was alleged to have discriminated or harbored discriminatory animus. Likewise, Defendant has never been a party to any lawsuit where it was alleged that a group booking offer extended by its revenue management team or charged to any guest was motivated by race. Any document pertaining to different litigation is not discoverable and Defendant is under no obligation to make any further disclosure." *Id.* at pp13-14.

54. Defendant's response is deficient for the following reasons: a) Defendant inappropriately narrows the definition for "subject matter" that Plaintiff provided in its deficiency letter; b) Defendant's claim that its objections are self-explanatory does not meet the specificity requirements; c) this request is relevant because assessing any discrimination claims made against Defendant via a civil action in the past ten years is reasonably calculated to lead to evidence that Defendant has a history of discriminatory behavior or employing racist employees and this would support Plaintiff's claims for punitive damages; d) while Defendant states that it has not been party to any suit "where it was alleged that a group booking offer extended by its revenue management team or charged to any guest was motivated by race," it is unclear whether Defendant has been a

party to any lawsuit involving discrimination. Further, Defendant is claiming that the decisions regarding the contract offered to Plaintiff were made by a group of employees, not just Ms. Shea. Given this defense, the scope of discovery must necessarily be expanded to include evidence of discriminatory animus at a higher level or discrimination practiced systematically. Plaintiff's request seeks documents evidencing any civil action relating to discrimination. The scope of this request is larger than that of Defendant's response. Plaintiff requests that this Court overrule Defendant's objections and order Defendant to provide a non-limited response.

### i.    Request for Production No. 17.

55. Plaintiff's request states, "Provide a copy of all written agreements you have made with any group associated with Salisbury University regarding a group stay since 2020 for your locations." *Id.* at p14.

56. Defendant's original objection states, "Defendant objects to this Request on the grounds that it is overly broad, seeks information that is not in evidence or relevant to either party's claims or defenses and/or is not proportionate to the needs of the case." *Id.*

57. Defendant's supplemental response states, "The subject matter of this dispute is whether group booking offers at Salisbury Courtyard by Marriott approved by Defendant's revenue management team and communicated to Plaintiff on February 26, 2022 and December 8, 2022 were motivated by Plaintiff's imputed race. Defendant's objections are self-explanatory and were explained. Contracts at other properties or beyond the discriminatory period alleged could not lead to the discovery of admissible evidence in this case. The Request also does not define (and Defendant does not know the identity of) 'any group associated with Salisbury University.' As a result of these objections, Defendant's search was limited to the Salisbury Courtyard by Marriott and Salisbury Residence Inn by Marriott properties, and the period November 2021

through December 2023. Defendant negotiated no contract with Salisbury University or any group identified as being affiliated with Salisbury University for a group stay during the period November 2021 and December 2023." *Id.* at p15.

58. Defendant's response is deficient for the following reasons: a) Defendant inappropriately narrows the definition for "subject matter" that Plaintiff provided in its deficiency letter; b) Defendant's claim that its objections are self-explanatory does not meet the specificity requirements; c) this response is relevant because comparing the rates and terms offered to any group associated with Salisbury University, a predominately white university, is reasonably calculated to discover evidence that Plaintiff was treated differently and discriminated against; d) it defies credibility that Defendant does not know what "any group associated with Salisbury University" means; and e) Defendant's supplemental grounds for its objections are waived due to timeliness. Plaintiff requests that this Court overrule Defendant's objections and order Defendant to provide a non-limited response.

**F. Request for expenses.**

59. Unless Defendant makes a showing that its failures were substantially justified, Plaintiff seeks its reasonable expenses incurred in making this motion, including attorney's fees under Fed.R.Civ.P. 37(a)(5)(A).

## II.   REQUEST FOR EXTENSION TO DISCLOSE PLAINTIFF'S EXPERT

60. On May 7, 2025, the parties submitted a Joint Status Report recommending August 15, 2025, as the deadline for Plaintiff's Rule 26(a)(2) disclosures. This Court adopted this deadline on the same date. Plaintiff now seeks a 28-day extension to this deadline. First, the discovery received from the Defendant is so lacking that it would be impossible for any expert to formulate opinions about the Defendants' conduct. Plaintiff has been diligent by serving discovery,

responding to Defendant's discovery and producing documents, and producing its President, Ms. Wallop, for a full day's deposition. Second, financial considerations require Plaintiff to seek an extension. Plaintiff, a nonprofit organization, relies on dues and contributions from its members to carry out its mission, including the prosecution of this case. Plaintiff has paid for the services of an expert locator service to identify two potential experts. However, given the substantial cost of retaining an expert, the decision to hire an expert must be presented to Plaintiff's Board Members for a vote. Plaintiff's next scheduled meeting is on August 26, 2025. A decision will be made that day; however, Plaintiff requires additional time after this meeting to retain the expert(s), supply them with information, and to obtain their opinions. As such, Plaintiff requests that this Court grant an extension for Plaintiff to provide its expert disclosure until September 12, 2025. Plaintiff further agrees to a corresponding extension for Defendant's expert disclosure until October 12, 2025. Defendant is opposed to this extension request.

### III.    REQUEST FOR EXTENSION TO AMEND PLEADINGS TO ADD PARTIES

61. On May 7, 2025, the parties submitted a Joint Status Report recommending July 7, 2025, as the deadline for joinder of additional parties. This Court adopted this deadline on the same date. Plaintiff now seeks an extension to add parties until thirty (30) days after Defendant complies with this Court order compelling discovery responses. Alternatively, if this Court denies Plaintiff's motion to compel, Plaintiff seeks an extension until fourteen (14) days after the Court's denial.

62. Until recently, Plaintiff was under the belief that Defendant was solely responsible for the mistreatment that Plaintiff endured. However, Defendant's discovery responses indicate that the other parties might be responsible or should be joined.

63. Plaintiff filed its complaint on August 8, 2023. Dkt. 1. Defendant was served with this suit on August 22, 2023. *See* Exhibit E. Defendant produced a series of emails starting on this

same date (SCHULTE0056-57). *See* Exhibit F. Moreover, in one of these emails, David Hiatt, Regional Vice President of Operations, asked if Ms. Shea had the 2023 contract that Defendant offered Plaintiff. These emails strongly suggest that Defendant was aware of the suit on August 22, 2023, and that it still operated the hotels, which made the basis of this suit.

64. During the course of this litigation, Defendant has indicated, first informally, and more recently, in its discovery responses,[10] that it is no longer the manager for the hotels in question and that the "Owner" has control of requested documents. Defendant has never supplied the name of the "Owner" and, in fact, the hotels in question have continuously done business as Courtyard by Marriott despite the Defendant's replacement.

65. Further, Defendant's answers to Plaintiff's interrogatories had made it impossible to determine the exact role of the owner. Plaintiff's Interrogatory No. 1 asks Defendant to identify and describe each verbal and written communication with someone other than Plaintiff about the subject matter of this dispute. *See* Exhibit B at p3. However, while Defendant stated that its objections did not limit its response, Defendant failed to disclose any communications to the owner about this matter. It is unclear whether Defendant is withholding information about these communications or whether Defendant elected not to inform the owner of the property of the subject matter of this dispute.

66. Moreover, Defendant's responses to Plaintiff's Requests for Production have also prevented Plaintiff from discovering the role of the hotel owner. Plaintiff's Request for Production No. 3 asks for all statements made by Defendant via email, text, or instant message about the subject matter of this dispute. *See* Exhibit C at p4. Request for Production No. 4 asks for all

---

[10] Plaintiff's Request for Production No. 29 asks for receipts, invoices, or financial records showing the number of times Defendant rented two queen beds for $800 a night. *See* Exhibit C at p24. In its supplemental response to this request, Defendant stated "that guest information and documents (receipts, invoices, financial, or otherwise) belongs to the Owner of Salisbury Courtyard by Marriott." *Id.*

documents and communications related in any way to the subject matter of this dispute. *Id.* Request for Production No. 14 asks for all documents received from or provided to any third party that are related to the subject matter of this dispute. *Id.* at p12. However, Defendant did not disclose any communications to the owner of the hotels about this matter. Defendant's objections and limited responses make it impossible to know whether Defendant is withholding these communications or whether Defendant failed to apprise the owner of Plaintiff's claims and this case.

67. Further, Defendant's counsel has informed Plaintiff that Defendant no longer manages or operates the hotels in question. It would be reasonable to expect that, since Defendant had notice of this suit before the owner transferred operations to a new operator, there would have been some exchange of information about the subject matter of this suit. However, Defendant has not disclosed such communications.

68. Plaintiff requests an extension of the deadline to add parties until thirty (30) days after Defendant has fully complied with Plaintiff's discovery requests. This would allow Plaintiff enough time to review the information and documents provided, to determine the identity of the owner and successor operator, and to ascertain the appropriateness of adding the owner[11] and/or new operator[12] to this suit in order to provide complete relief. Defendant is opposed to this extension request.

---

[11] "This Court has noted that an action brought for compensation by a victim of housing discrimination is, in effect, a tort action. And the Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley,* 537 U.S. 280, 285 (U.S. 2003). In *Courtney*, the Court found that "[b]ased on the fact that the Agreement shows the intention of both parties to form an agency relationship, and Hotel Investments actual control over the operations of the motel, this court finds that Quality Management was the agent of Hotel Investments on October 1, 1979, and any negligence attributed to Quality Management will be imputed to Hotel Investments."

[12] : "Failure to hold a successor employer liable for the discriminatory practices of its predecessor could emasculate the relief provisions of Title VII by leaving the discriminatee without a remedy or with an incomplete remedy. Broadly speaking, then, courts should balance the needs of discriminatees and the national policy against discrimination evinced by Title VII against the unfairness of holding an innocent purchaser liable for another's misdeed and the possible chilling of the corporate market." *U.S. Equal Employment Opportunity Commission v. Phase 2 Investments Inc.,* 310 F.Supp.3d 550, 569-70 (D.Md. April 17, 2018); citing *Nutt v. Kees*, 796 F.3d 988, 991 (8th Cir. 2015) ("Before imposing successor liability, a court must balance the plaintiff's interests, the defendant's interests,

WHEREFORE, Plaintiff respectfully requests that the Court Grant Plaintiff's Motion to Compel Discovery, Grant Plaintiff's request for the extension of time to disclose Plaintiff's expert, Grant Plaintiff's request for the extension of time to add parties to this suit, and afford it such other relief to which this Court may deem it entitled.

August 15, 2025

Respectfully submitted,

/S/ John T. Brennan
John T. Brennan, Esq.
The Brennan Law Firm, LLC
1997 Annapolis Exchange Parkway
Suite 300
Annapolis, MD 21401
(410) 266-3970
(410) 721-4284 fax
tbrennan@brennan-law.us

*Attorney for Plaintiff*

## Certificate of Service

A true copy of the foregoing Response was served on all counsel of record by the CM/ECF service on August 15, 2025.

/S/ John T. Brennan
John T. Brennan

---

and federal policy."); *cf. National Am. Ins. Co.*, 25 Fed.Appx. at 121 (noting, in a different context, that holding successor companies liable simply because they purchased the assets of a cash strapped business would "drastically chill future asset purchases."). While this case is not a Title VII case, Title VII relates to discriminatory practices, and the cited cases relate to federal policy.